NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A-TECH CONCRETE COMPANY, INC. and ALLRITE CONTRACTING, INC., <br><br> Petitioners, <br><br> v. <br><br> NORTHEAST REGIONAL COUNCIL OF CARPENTERS, <br><br> Respondent. | Civil Action No.: 15-8055 (CCC-MF) <br><br> OPINION |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

This matter comes before the Court on a Petition to Vacate an Arbitration Award brought by Petitioners A-Tech Concrete Company, Inc. ("A-Tech") and Allrite Contracting, Inc. ("Allrite") (collectively, "Petitioners"). [ECF No. 1.] Petitioners have moved for an order vacating the October 17, 2015 Award and Order of Arbitrator J.J. Pierson (the "Arbitration Award").[1] [ECF No. 2.] Respondent Northeast Regional Council of Carpenters (the "Union") opposes the motion and has brought a Cross-Petition and Cross-Motion to Confirm the Arbitration Award. [ECF No. 7.] The Court decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.[2] Having considered the parties' submissions and for the reasons set forth below, the Court denies Petitioners' motion and grants the Union's motion. The Court will therefore confirm the arbitration award.

---

[1] The Arbitration Award can be found at ECF No. 7-2.
[2] The Court considers any arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

## II.     BACKGROUND

### A.  The CBA between A-Tech and the Union

Petitioner A-Tech is a signatory contractor to a collective bargaining agreement ("CBA") with the Union. [Petition ¶ 14.] Pursuant to the CBA, A-Tech is obligated to employ Union members for work within the CBA's jurisdiction and to pay such members certain contractual wages, benefits, and remit dues. [ECF No. 7-9 at 3.] Pursuant to Article XIX of the CBA, A-Tech agreed that:

> [A-Tech] will not subcontract any work within the jurisdiction of the Union which is to be performed at the job site except to a contractor who holds an agreement with the United Brotherhood of Carpenters and Joiners of America or one of its subordinate bodies having jurisdiction at the job site, or who agrees in writing, prior to or at the time of the execution of his subcontract, to be bound by the terms of this Agreement.
> . . .
> [A-Tech] represents that its members, officers, and supervisory personnel will not attempt to form or participate in the creation of or operation of new or double-breasted[3] corporations for the purposes of avoiding the obligations of this Agreement.

[ECF No. 2-20 at 24 ("Article XIX – Subcontractor Clause").]

### B.  The Balaji Temple Project

The underlying facts of this case involve work performed for a construction project at the Hindu Temple & Cultural Society of USA Inc., Si Venkateswara Temple, 1 Balaji Temple Drive, Bridgewater, NJ 07080 (the "Balaji Temple Project"). [Petition ¶ 6.] The general contractor for the project was third-party company JSCM, Inc. [Id. ¶ 7.] On or about May 2, 2013, Petitioner

---

[3] A "double-breasted" operation is where an "employer maintains one company that is a signatory to a CBA while maintaining a second, non-union company in the same line of work. Such a technique enables the employer to utilize non-union labor." *Becker Electric Co. v. Int'l Brotherhood of Electrical Workers*, 927 F.2d 895, 896 (6th Cir. 1991). When a CBA contains an "anti-double breasting" clause such as this, its goal "is to prevent the employer from transferring union work to the non-union side of a double-breasted employer." *Blair Communs., Inc. v. IBEW, Local Union No.5*, 640 F. Supp. 2d 636, 641 (W.D. Pa. 2009).

2

Allrite was awarded a bid and was subcontracted by JSCM, Inc. to perform concrete, masonry, excavation/backfill, and waterproofing for the Balaji Temple Project. [*Id.*] Petitioner Allrite *is not* a signatory contractor to any CBA with the Union. [*Id.* ¶ 15.]

On or about September 27, 2013, Petitioner Allrite entered into a subcontract agreement with Petitioner A-Tech. [*Id.* ¶ 8.] A-Tech *is* a signatory contractor to a CBA with the Union. [*Id.* ¶ 14.] Under the subcontract agreement, A-Tech was to perform excavation, backfilling, and grading work for the Balaji Temple Project. [*Id.* ¶ 8.] Allrite also agreed to rent equipment from A-Tech for the Balaji Temple Project. [*Id.*]

### C. The Dispute

As a result of A-Tech's activities in connection with the Balaji Temple Project, the Union contended that A-Tech breached its CBA with the Union. Specifically, the Union contended that A-Tech, operating as a concrete contractor in the building and construction industry, violated Articles III, XIX, and XXVII of the CBA by failing to contact and advise the Union of the job and failing to employ member-Carpenters to perform installation of concrete forms on the job. [Arbitration Award at 5.] The Union contended that A-Tech accomplished its avoidance of its contractual obligations by operating A-Tech and Allrite as a double-breasted corporation. [*Id.*]

The CBA between A-Tech and the Union includes a clause requiring any grievance or controversy to "be submitted to binding arbitration." [CBA, ECF No. 2-20 at 23 ("Article XVIII - Grievances and Arbitration").] Pursuant to that clause, the Union notified A-Tech of the grievance and then initiated an arbitration proceeding, alleging that A-Tech failed to comply with the CBA. [Petition ¶ 51.] The issue submitted to the Arbitrator was:

> Whether [A-Tech] violated the Collective Bargaining Agreement by failing to apply its terms and conditions on the Balaji Temple (Bridgewater, NJ) jobsite? If so, what shall be the remedy?

[Arbitration Award, ECF 7-2 at 1.]

An arbitration hearing was conducted on September 18, 2014 before J.J. Pierson, Esq. (the "Arbitrator"). [*Id.* ¶ 52.] At the hearing, the Union presented live testimony from one witness (Richard Dalrymple, a business agent for the Union) and twelve exhibits (including photographs and corporate business records). [ECF No. 7-9 at 5.] A-Tech presented the live testimony of one witness (Armando Amorim, company president) and documentary evidence (including invoices for subcontracting). [*Id.*]

After reviewing the evidence, the Arbitrator concluded that

> A-Tech maintained more than an arms-length subcontractor relationship with Allrite on the Balaji Temple jobsite and more than a "victim of circumstances" that created the appearance that A-Tech was operating and participating with Allrite to avoid assignment of Union Carpenters and payment of contractual wages and benefits.

[Arbitration Award at 16.] This conclusion was based upon the Arbitrator's factual determinations, including the common address where both A-Tech and Allrite rented property, the familial relationship between principals of the two companies, photographs of carpenters at the jobsite wearing A-Tech shirts, and an "Allrite" placard affixed with masking tape over an "A-Tech" logo on a truck (which the Arbitrator found to be evidence of concealment). [Arbitration Award at 16-18.] Ultimately, the Arbitrator weighed the credibility of the testimony and found Mr. Dalrymple's testimony to be credible and Mr. Amorim's testimony to be less credible.

On October 17, 2015, the Arbitrator issued the Arbitration Award against A-Tech in the total amount of $196,289.60. [*Id.* ¶ 59.] This amount consists of $122,011.20 to be paid to the Union for lost wages, $70,778.40 to be paid to the New Jersey Carpenters Funds for lost benefit contributions, and $3,500 to be paid to the Union as reimbursement for one half of the Arbitrator's fee.

Petitioners bring this action to vacate the Arbitration Award. [*Id.* ¶ 60.] The Union cross-petitions for judgment confirming the Arbitration Award. [ECF No. 7.]

## III. DISCUSSION

Petitioners make two independent arguments. First, Petitioners contend that the dispute was not substantively arbitrable because Allrite did not have a CBA with Respondent. Second, Petitioners argue that the Arbitrator's Decision was arbitrary and capricious and inconsistent with the law. The Court will address both arguments.

### A. The dispute between A-Tech and Respondent was substantively arbitrable.

"Substantive arbitrability" refers to "the question whether a particular dispute is subject to the parties' contractual arbitration provisions." *Bell Atlantic-Pennsylvania v. Communication Workers, Local 13000*, 164 F.3d 197, 200 (3d Cir. 1999). "[S]ubstantive arbitrability determinations are to be made by a court and not an arbitrator." *Id.*

In this case, it is undisputed that A-Tech entered into a CBA with the Union and that A-Tech "agreed to be bound by the terms and conditions set forth in the CBA." [ECF No. 2-25 at 1.] It is further undisputed that the CBA explicitly prohibited A-Tech from participating in the "operation of new or double-breasted corporations." [ECF No. 2-20 at 24.] Finally, it is undisputed that the CBA included a clause requiring any grievance or controversy to "be submitted to binding arbitration." [ECF No. 2-20 at 23 ("Article XVIII - Grievances and Arbitration").] Accordingly, when the Union had a grievance against A-Tech for participating in the operation of a double-breasted corporation, it properly submitted that grievance to binding arbitration. Therefore, as between A-Tech and the Union, there is no question of substantive arbitrability for this Court to determine.

Petitioners argue that the dispute in this matter was not substantively arbitrable based on the sole fact that Allrite (the other Petitioner in this matter) did not have a CBA with the Union. That fact, however, is irrelevant for two reasons.

5

First, by its very definition, a double-breasted corporation involves two companies, one of whom does not have a CBA with the relevant union. In this case, the CBA explicitly prohibits A-Tech from participating in the operation of a double-breasted corporation. Under a reasonable reading of the CBA, a grievance for this fundamental violation of the CBA must fall within the jurisdiction of the Arbitrator. A contrary result would be nonsensical as it would allow A-Tech to avoid arbitration by doing precisely what the CBA prohibits—*i.e.,* operating a double-breasted corporation.

Second, in this case, the Arbitrator did not make any determination as to whether Allrite had a CBA with the Union, whether Allrite breached a CBA with the Union, or whether Allrite was liable to the Union. Indeed, the Arbitrator's Decision did not attempt to bind Allrite in any way. Rather, the Arbitration Award related solely to A-Tech's liability to the Union for breaching the CBA by *participating in the operation of a double-breasted corporation*. In reaching that conclusion, the Arbitrator analyzed the factual evidence and applied a test to determine whether there was a double-breasted operation. [*See* Arbitration Award at 15.] The application of that test necessarily involved findings about the relationship between A-Tech and the other company in the double-breasted operation, namely Allrite. [*See* Arbitration Award at 15-18.] However, it does not follow that the analysis presented a question of substantive arbitrability as to the entire dispute merely because factual determinations were made about a company who was not a signatory to the CBA.[4]

---

[4] The Court further notes that A-Tech's strategic decision to include Allrite as a Co-Petitioner in this matter does not change the result. Moreover, it is unclear whether Allrite even has standing to join the Petition in this matter, as Allrite does not appear to have suffered any injury-in-fact from the Arbitration Award which was issued solely against A-Tech. However, as the Court's conclusions are limited to confirming the arbitration award against A-Tech, the standing issue appears to be moot.

In accordance with this analysis, the Court finds that no question of substantive arbitrability was presented. Therefore, the dispute was within the scope of the Arbitrator's jurisdiction.

### B. The Arbitrator's Decision was not arbitrary and capricious.

The law views the arbitration process with favor and a federal court's role in reviewing an arbitration award is limited. The Court's "role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator." *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004). "[A]rbitration awards enjoy a strong presumption of correctness that may be overcome only in certain limited circumstances." *Id.* at 280. The Supreme Court has stated:

> Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement.... When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award.

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal citations omitted). This Court must uphold an arbitration award if it "draws its essence from the collective bargaining agreement" because "the parties to the collective bargaining agreement 'bargained for' a procedure in which an arbitrator would interpret the agreement." *National Ass'n of Letter Carriers, AFL-CIO v. United States Postal Serv.*, 272 F.3d 182, 185 (3d Cir. 2001). The Court may vacate an arbitration award only if the arbitrator "exceeded [his] powers, or so imperfectly executed them," *see Matteson v. Ryder System, Inc.*, 99 F.3d 108, 112 (3d Cir. 1996), or if the arbitrator "demonstrated a manifest disregard for the CBA" because the award is "totally unsupported by principles of contract construction." *See Major League Umpires*, 357 F.3d at 280 (internal quotations omitted).

In this case, Petitioners contend that A-Tech did not violate the terms of the CBA. Specifically, Petitioners argue that the Arbitrator's findings were based on tenuous connections that do not support his conclusion that A-Tech was operating a double-breasted corporation. Petitioners argue that A-Tech was a subcontractor of Allrite pursuant to an arms-length subcontracting agreement and that Allrite and A-Tech are distinct business entities. [ECF No. 2-25 at 12-13.] The Petition asks this Court to vacate the Arbitration Award and conduct an evidentiary hearing to determine whether A-Tech and Allrite are distinct business entities. [Petition at 9-10.]

All of Petitioners' arguments, however, were made to—and rejected by—the Arbitrator. Essentially, Petitioners ask this Court to conduct a *de novo* review of the facts to determine whether the Arbitrator's conclusions were correct. Such a review would be contrary to law.

Under the appropriate standard of review, this Court will not review the fact-finding of the Arbitrator. The Court finds that the Arbitration Award draws its essence from the CBA and the Arbitrator did not exceed the scope of his powers. Furthermore, as the Arbitration Award was not "totally unsupported," the Arbitrator did not demonstrate a manifest disregard for the CBA. The Arbitration Award will be confirmed.

## IV. CONCLUSION

Having reviewed the parties' submissions, the Court denies Petitioners' Motion to Vacate the Arbitration Award. The Court grants Respondent's Cross-Motion to Confirm the Arbitration Award. An appropriate Order accompanies this Opinion.

Dated: June 30, 2016

CLAIRE C. CECCHI, U.S.D.J.